## In re FRANKLIN GARDEN APARTMENTS, Inc.

### No. 40414.

District Court, E. D. New York.

March 19, 1941.

Leo J. Linder, of New York City, for debtor.

Louis J. Castellano, of Brooklyn, N. Y., for Green Point Sav. Bank.

Zalkin & Cohen, of New York City, for trustee.

William Walzer, of New York City, and Aaron Powsner, of Brooklyn, N. Y. (Raymond Gitlin, of New York City, of counsel), for Informal Creditors' Committee.

GALSTON, District Judge.

On February 5, 1941, the debtor filed its voluntary petition for reorganization under the provisions of Chap. X of the Bankruptcy Act, 11 U.S.C.A. § 501 et seq.

The debtor is a New York corporation, the sole substantial asset of which at the time of filing of the petition was an apartment house located in Queens County, New York. The premises are subject to a building loan mortgage in the sum of $385,000 made to the Green Point Savings Bank (hereinafter to be referred to as the Bank) under date of May 24, 1940. Under this mortgage the principal sum of $382,500 had been advanced by the Bank to the debtor. On December 1, 1940, an instalment of interest in the amount of $4,488.06 became

due pursuant to the terms of the mortgage. The debtor paid on account the sum of $1,000 on January 10, 1941, leaving a balance of $3,488.06 due and owing. The mortgage provided that in the event of a default in the payment of interest, the rents would be assigned to the mortgagee. In accordance therewith the debtor, on January 23, 1941, did execute an instrument wherein, after reciting the aforesaid default and aforementioned covenant in the mortgage, the debtor assigned the rents then due or thereafter to become due to the mortgagee and surrendered possession of the premises to the mortgagee. The trustee's petition recites that under the terms of the instrument of assignment it was to remain effective until the mortgaged premises were conveyed by a referee in an action for the foreclosure of the said mortgage or until the defaults existing under the mortgage were cured.

Thereafter the Bank went into possession and since January 23, 1941, has collected and received the rents except the sum of $180.29 which the trustee collected from one of the tenants. It also appears that the Bank has paid various obligations incurred in connection with the operation of the mortgaged premises and on or about February 10, 1941, paid to itself on account of the aforesaid interest arrears the sum of $1,500.

The land upon which the building was erected was purchased by the debtor in the year 1939 at a cost of $52,500. The building was erected by the debtor at a cost of $516,945.45, exclusive of the cost of the land. The building has not been completed though many of the apartments have been rented; a sprinkler system has not been installed and refrigerators, shower doors, medicine cabinets and miscellaneous items and hardware and some furniture are still to be supplied as well in the unrented apartments, and the lobby remains to be furnished. It appears that garages for the tenants are included as part of the premises and that no permanent certificate of occupancy for the building can be obtained from the municipal authorities until a sprinkler system is installed. Accordingly the apartments have been operated to date under a temporary certificate of occupancy. It is estimated that the amount necessary to complete the building will be approximately $16,000. At the date of the filing of the petition sixty-seven apartments out of the total of one hundred twenty-three apartments were ready and occupied by tenants. The monthly rent roll was $4,907.50. It is estimated that if all the apartments were fully rented the aggregate monthly rent roll would be $9,237.50, to which would be added $480 per month for the garage. Since the filing of the petition six additional apartments have been rented. In the opinion of the trustee, who has been actively engaged in the erection of apartment houses in the City of New York for upwards of thirty-five years, the building is worth not less than $505,000, and with the fair value of the land at $52,500, the total value of the real estate is $557,500.

For the protection of the very substantial equity of $175,000 the trustee seeks possession of the mortgaged premises and the right to collect and receive the rents so as to enable him to raise funds necessary to complete the building and to rent the remaining vacant apartments. The trustee has made written demand upon the mortgagee to surrender possession of the premises and to turn over to him the rents collected since February 8, 1941, but the mortgagee refuses to comply with the demand. The present application is by the trustee for an order adjudging him to be in possession of the premises and entitled to collect and receive the rents therefrom, and directing the Bank to turn over to the petitioner the amount of all rents collected and received from the mortgaged premises since February 8, 1941, less the actual operating costs of the premises since that date, but including any and all sums which may have been applied by the Bank on account of the principal and interest of the mortgage held by the Bank.

From the debtor's petition it appears that at the time of the filing of the petition for reorganization, claims of unsecured creditors aggregated $197,107.55.

The Green Point Savings Bank appears specially objecting to the summary jurisdiction of the court upon the ground that it is an adverse claimant in possession and asserts that the defaults under the bond and mortgage have not been cured and that as the debtor is without means or funds, the use of the rents for any purpose except payment of operating expenses of the building, payment of current and accruing taxes, accrued or accruing interest on the mortgage, will result in an impairment of the security of the mortgage debt.

The reply affidavit submitted by the Green Point Savings Bank discloses that a further interest payment of $4,781.25 became due on March 1, 1941. It expresses the opinion that there is no likelihood that a reorganization can be effected because the debtor is without means or funds to pay administration expenses, to complete the building, and to pay chattel mortgages and conditional bills of sale; that the debtor has no equity and that the present mortgage, which is a building loan, matures October 24, 1941, and that the mortgagee has not agreed to any modification of the terms of the bond and mortgage held by it.

■ The Bankruptcy Act, Title 11, Sec. 657, by virtue of the amendment of June 22, 1938, provides in part that

"The trustee or debtor in possession shall also have the right to immediate possession of all property of the debtor in the possession of a trustee under a trust deed or a mortgagee under a mortgage."

The language of this provision is entirely clear and since the court has jurisdiction by virtue of the apparent good faith with which the petition was filed, it would seem that by virtue of this provision of the Bankruptcy Act it was intended that the court should in a proper case exercise summary jurisdiction. There is no reason why a plenary suit should be instituted by the trustee to obtain possession of the premises held by the mortgagee under the debtor's assignment. The provision of the Act which is quoted was added by the Chandler Act to Subdivision i of Sec. 77B of the former statute, 11 U.S.C.A. § 207. The comment of Weinstein (a member of the National Bankruptcy Conveyance and of the drafting committee which submitted the Chandler Act) in his analysis of "The Bankruptcy Law of 1938" on this provision of the statute is: "This is a new provision which broadens the scope of the right to possession. The trustee or debtor is also given the right to possession of the debtor's property taken over by an indenture trustee or a mortgagee under a mortgage, without the aid of a court proceeding."

The mortgagee disregards this provision of the Chandler Act and cites no cases since its enactment. In consequence, Reighard v. Higgins Enterprises, 3 Cir., 90 F. 2d 569, is not applicable; but even that case cannot be reconciled with In re Park Beach Hotel Building Corporation, 7 Cir., 96 F.2d 886; and In re Greyling Realty Corporation, 2 Cir., 74 F.2d 734. These cases also were decided prior to the enactment of the provision in question, but nevertheless proceeding from the premise that upon adjudication all property of the bankrupt vests in the trustee as of the date of the filing of the petition, held that the bankruptcy jurisdiction and the court's possession and control of the estate in pursuance thereof are paramount and exclusive and cannot be affected by proceedings in other courts. See Taylor v. Sternberg, 293 U.S. 470, 55 S.Ct. 260, 79 L.Ed. 599, and Gross v. Irving Trust Co., 289 U.S. 342, 53 S.Ct. 605, 77 L.Ed. 1243, 90 A.L.R. 1215. On the other hand there are cases which hold that the bankruptcy court lacks the power to supersede a prior receiver or a mortgagee in possession where the laws of the particular state of appointment vested in such receiver or mortgagee the title to rents from the premises. In re Berdick, D.C., 56 F.2d 288, 289. The mortgagee's claim rested upon the assignment of rents after the default and commencement of foreclosure proceedings, followed up by actual collection of rents. Judge Patterson wrote: "It thus appears that the mortgagee is for all practical purposes in possession of the premises by consent of the mortgagor and is receiving the rents."

He held therefore that the rights of the mortgagee were superior to those of the receiver in bankruptcy. He observed, however, that the mere default of the mortgagor does not work a transfer of the rents to the mortgagee, notwithstanding the terms of the assignment, Sullivan v. Rosson, 223 N.Y. 217, 119 N.E. 405, 4 A.L.R. 1400, and wrote: "So the receiver in bankruptcy here would be entitled to the future rents if the mortgagee's claim to them were based simply upon the assignment clause in the mortgage and upon the institution of the foreclosure suit, no receiver in foreclosure having entered."

Thus it was placing the mortgagee in possession in addition to the assignment of the rents after default and commencement of foreclosure proceedings followed by actual collection which led to the declaration that the mortgagee's rights were superior to those of the receiver in bankruptcy. In re Kings County Real Estate Corporation, 2 Cir., 67 F.2d 895, considered the relative rights of a junior mortgagee and a first mortgagee in a bankruptcy proceeding. The court observed that the federal court would follow the state law on questions

involving real property located therein. As declaring the local law the Bank relies on Graf v. Hope Building Corp., 254 N.Y. 1, 171 N.E. 884, 70 A.L.R. 984. This case stands for the doctrine that a mortgagee may insist on his contract rights, treat the non-payment of proper interest as a default, and avail himself of the acceleration clause in the mortgage. In re Brose, 2 Cir., 254 F. 664, also declared that in a bankruptcy proceeding arising in New York, where there was a controversy between the receiver in bankruptcy and a receiver appointed in a subsequently instituted action to foreclose, the federal courts would follow the decisions of the state court as to the rights under the mortgage, the property being in New York. It was there declared that the law of New York establishes the principle that an assignment of rent is of like character as a transfer of real property and that a mortgagee desiring to obtain such rents should actually possess himself of them. Apparently that has been done here. If these cases had been decided subsequently to the enactment of the Chandler Act, and the same conclusions reached, there is no doubt that the trustee's motion now made would have to be denied.

■ Thus there remains for consideration the effect to be given to Section 257 of the Bankruptcy Act, 11 U.S.C.A. § 657. To make the foregoing cases decisive of the question it would be necessary to read into the statute terms that are not there expressly. The statute says that the trustee shall have the right to immediate possession of premises in the possession of a mortgagee under a mortgage. There is nothing therein expressed about any limitation of local law. To defeat the Congressional enactment one would have to add to the statute conferring right of possession to the trustee, some such condition as unless the local law is to the contrary. There is no attempt here to override a valid mortgage lien, as was suggested in Duparquet, etc., Co. v. Evans, 297 U.S. 216, 56 S.Ct. 412, 415, 80 L.Ed. 591, though there is a stated intention to "supersede a receiver who has been put into possession in fulfilment of the mortgage contract". This, however, in effect does no more than temporarily stay the remedy of the mortgagee. Continental Illinois National Bank & Trust Co. v. Chicago, R. I. & P. Ry. Co., 294 U. S. 648, 55 S.Ct. 595, 79 L.Ed. 1110; Louisville Joint Stock Land Bank v. Radford,

295 U.S. 555, 55 S.Ct. 854, 79 L.Ed. 1593, 97 A.L.R. 1106. Moreover, unlike the cases which consider the staying of suits for the foreclosure of the mortgage, the title to the mortgaged premises herein and the right to possession follow automatically upon the approval of the petition as properly filed. Sections 70 and 257 of the Bankruptcy Act, 11 U.S.C.A. §§ 110, 657.

■ Pursuant to Section 70 of the Chandler Act, Chap. VII, 11 U.S.C.A., § 110, the trustee, whether of the bankrupt or of the debtor, is vested with the bankrupt's title as of the date of the bankruptcy or of the filing of the petition in a debtor relief proceeding. These provisions apply not only to the realty but also to the funds which the bank collected since the filing of the debtor's petition. It is not contended that Sections 656 and 657 of Title 11, U.S.C.A., are unconstitutional. Indeed such objection was cursorily brushed aside in Clark Bros. Co. v. Portex Oil Co., 9 Cir., 113 F.2d 45. See also Wright v. Vinton Branch of the Mountain Trust Bank of Roanoke, 300 U.S. 440, 57 S.Ct. 556, 81 L.Ed. 736, 112 A.L.R. 1455; Continental Illinois National Bank & Trust Co. v. Chicago, R. I. & P. Ry. Co., 294 U.S. 648, 55 S.Ct. 595, 79 L.Ed. 1110; Louisville Joint Stock Land Bank v. Radford, 295 U.S. 555, 55 S.Ct. 854, 79 L.Ed. 1593, 97 A.L.R. 1106.

Sections 656 and 657 of 11 U.S.C.A. were before the court in In re Shelburne, Inc., 3 Cir., 102 F.2d 612. The District Court had issued an order directing trustees of the debtor in reorganization to petition the Court of Chancery of New Jersey for a turnover order directed to custodial receivers in a mortgage foreclosure suit. The Circuit Court of Appeals held that the order was justified in view of the provisions of Sections 256 and 257 of Chap. X of the Bankruptcy Act, 11 U.S.C.A., §§ 656 and 657.

■ There remains also for consideration the matter of good faith in filing the petition. Brooklyn Trust Co. v. Rembaugh, 2 Cir., 110 F.2d 838, 839. As to this issue the mortgagee is on no firmer ground. On the papers before me it must be concluded that there is a very considerable equity to protect. This appears from the actual cash investment made by the debtor, from the appraisal made by a competent expert, and from the firm offer made by one Mandel to purchase the property subject to the existing mortgage for $75,000.

No other creditor opposes the application of the trustee and indeed the intervening creditors' committee supports it. It would seem that this is a proper case, with these additional facts now developed, for this court to regard the petition as having been filed in good faith. The trustee's contention is persuasive that without the physical possession of the building and the right to collect rents he will be heavily handicapped in his effort to obtain funds for the completion of the building. Moreover, refinancing to meet the needs of the situation will be rendered most difficult unless the building is completed and an adequate rent income secured. With the effecting of a permanent loan, it is the intention to pay off the present mortgagee in full. A rather belated position is taken by the debtor in opposition to this motion wherein it asserts that the mortgagee can just as effectively operate the building. But there is no obligation on the part of the mortgagee to complete the building and that is imperative in the circumstances.

The position assumed by the debtor is indeed anomalous. On January 21, 1941, Rossen, the president of the debtor, received a demand from the Bank insisting on payment of the interest due or in lieu thereof that it have an assignment of rents. On the failure of either the Bank threatened institution of foreclosure proceedings. To stay off foreclosure an assignment of rents was given. Then less than two weeks later the debtor filed the present voluntary petition in order to anticipate the filing of an involuntary petition for reorganization by its creditors. This same president sought to be appointed a trustee. The debtor apparently now ignores entirely the consequences that would result from the denial of the trustee's motion. It would leave the trustee in vacuo, with his hands completely tied in the effort to further the very object of the reorganization proceedings.

In this proceeding it is important to consider not only the position of the debtor but also that of the other creditors who very properly support this motion. After all, the debtor's rights will be subordinated to those of all his creditors. Finally it must be observed that the obligation to formulate and present a plan of reorganization under the present Act is imposed upon the trustee.

The motion, therefore, of the trustee is granted. The order will adjudge the trustee in possession and entitled to collect and receive the rents which accrued on and after February 8, 1941; and will direct the Green Point Savings Bank to account to the trustee for all rents received by it since that date and to turn over to the trustee the net balance after deducting therefrom the actual operating costs of said premises since said date. The order will also provide that after the payment of operating charges, cost of completion of the building, and payment of the administrative expenses in this proceeding, the balance of rents will be turned over to the Bank on account of its mortgage. Settle order on notice.